Matthew N. Evans (7051)
Michael K. Erickson (12503)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, #1400
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
mevans@rqn.com
merickson@rqn.com

*Attorneys for Plaintiff Deseret Digital Media, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| DESERET DIGITAL MEDIA, INC., | **COMPLAINT** |
| Plaintiff, | |
| v. | Civil No. 2:14-cv-00601-BSJ |
| IMPACT SOURCES, INC., a Utah corporation; and GLEN WAGNER, an individual, | Judge Bruce S. Jenkins |
| Defendants. | |

Plaintiff Deseret Digital Media, Inc. ("DDM") alleges against Defendants Impact Source,

Inc. ("Impact") and Glen Wagner ("Wagner") (collectively "Defendants") and states as follows:

### PARTIES

1.      Plaintiff DDM is a Utah professional corporation, having an office and principal

place of business at 55 North 300 West Suite 500, Salt Lake City, Utah 84101-3502.

2.      On information and belief, Defendant Impact is a Utah corporation, having an office and principal place of business at 85 East Main St., American Fork, Utah 84003.

3.      On information and belief, Defendant Wagner is a resident of Utah County.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. §§ 1116 and 1121, and 28 U.S.C. §§ 1331, 1367, and 1338.

5.      This Court has personal jurisdiction over Defendants because Defendants, on information and belief, are residents of Utah and/or have continuous and systematic contacts with this forum and/or specific contacts with Utah sufficiently related to this cause of action to warrant the exercise of personal jurisdiction.   Moreover, Defendants have knowingly and purposely infringed DDM's intellectual property and engaged in other unlawful activities, the harm of which has been felt by DDM in Utah.

6.      Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391.

## GENERAL ALLEGATIONS

7.      DDM operates the website KSL.com (the "Website"), where it is engaged in the business of, among other things, providing online advertising.   Through the Website, DDM manages an extensive classified ad service for buying and selling thousands of different types of merchandise and property, including household goods, furniture, electronics, cars, and homes, making it the premier classified ad service in Utah.

8.      As part of its classified ad service, DDM manages "KSL Cars," the automobile related portion of the classified ad service on the Website.   Since 2011, DDM has continuously

used the marks KSL.com, KSL CARS, and/or KSL CLASSIFIEDS (collectively "DDM's Marks" or the "Marks") throughout the state of Utah and the Intermountain West region in association with and/or to identify its classified ad service for automobiles and other automobile related products and services.  As such, residents of the state of Utah and the Intermountain West region recognize the Marks as identifying a distinctive source of goods and services.

9.     DDM's classified ad service enjoys an exceptional reputation for its trusted services that consumers associate with DDM's Marks.  This exceptional reputation is the result of DDM's significant investment of time and resources over the years to provide consumers with the premier classified ad service in Utah.  Due to DDM's efforts, the Marks are well known across the state of Utah and the Intermountain West region and are associated with DDM's popular classified ad service for automobiles and other automobile related products and services.  As such, DDM has built up, owns, and is a beneficiary of valuable goodwill in the Marks.

10.    As part of its classified ad service, DDM allows users of the Website to post advertisements for used cars.  Due to the popularity of the Website, users post numerous ads, causing earlier posted ads to quickly move down pages on the Website.  Customers cannot "repost" their ad—that is, post the same or similar ad again—for a period of fourteen (14) days (the "Repost Waiting Period").  Customers, however, may pay a fee to have their ad placed at the top of the first page once again (the "Repost Fee").  Thus, customers can pay to repost their ads before the expiration of the Repost Waiting Period that would otherwise be required.

11.    To post advertisements, users of the Website must agree to the "KSL Classifieds Terms of Use" (the "Website TOU").  The Website TOU state, in relevant part, "*Reposting*. You

must wait at least fourteen (14) days before reposting an Ad for the same or substantially similar goods. You must delete your prior Ad before reposting."

12.     Without authorization from DDM, Defendants represented to third parties, including for example automobile vendors, that Defendants are "an official KSL Cars product and service vendor."

13.     Defendants also branded or otherwise identified their products and services with the mark "KSL Cars," including for example the following: "KSL Cars 2.0 Dealership Accounts" and "KSL Cars 2.0 Manual Post Account."

14.     On information and belief, Defendants have, in connection with their goods and services, made other use of DDM's Marks, or have otherwise suggested an affiliation, connection, or association with DDM's Marks or the Website.

15.     DDM never authorized Defendants to use the Marks or to otherwise suggest any affiliation, connection, association, sponsorship, or endorsement of Defendants' products or services by DDM and/or the Website.

16.     Defendants' unauthorized and unlawful use of DDM's Marks is causing and is likely to cause confusion, mistake, and deception as to Defendants' affiliation, connection, or association with DDM and/or the Website.  Furthermore, Defendants' unauthorized and unlawful use of DDM's Marks is causing and is likely to cause confusion, mistake, and deception as to the origin, sponsorship, or approval of Defendants' goods and services.

17.     DDM has learned that third parties are confused by Defendants unauthorized and unlawful use of DDM's Marks and believe that Defendants' use is authorized and/or that

4

Defendants' are affiliated, connected, or associated with and/or sponsored or endorsed by DDM and/or the Website.

18.     Using these false and misleading statements about their affiliation, Defendants contacted automobile vendors and misrepresented that Defendants were authorized to repost advertisements on the Website before the expiration of the Repost Waiting Period.

19.     For this unauthorized service, Defendants charged automobile vendors a fee to repost their car ads and then caused these ads to repost on the Website by circumventing the Website's protections and/or by exceeding the scope of Defendants' authorized access to the Website.  In doing so, Defendants reposted thousands of ads for automobile vendors without ever paying DDM the Repost Fee for any of these transactions.

20.     DDM estimates that it has lost over $1 million dollars in revenue as a result of Defendants' unlawful conduct.

## <u>FIRST CAUSE OF ACTION</u>
**(Trademark Infringement; False Designation of Origin; 15 U.S.C. § 1125(a))**

21.     DDM realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

22.     DDM is the owner of the Marks, and the consuming public recognizes the Marks as being distinctive, and as an identifier of the classified ad service that DDM provides through the Website.  DDM's Marks have acquired secondary meaning.

23.     Notwithstanding DDM's well-known prior rights in the Marks, Defendants used, are using, and continue to use, without authorization, DDM's Marks in commerce and in

connection with their products and services, including for example by misrepresenting that Defendants are "an official KSL Cars product and service vendor" and by branding or otherwise identifying their products and services as "KSL Cars 2.0 Dealership Accounts" and "KSL Cars 2.0 Manual Post Account."

24.     Defendants' unauthorized use of the Marks in connection with their goods and services in commerce is likely to cause confusion, mistake, or deception as to Defendants' affiliation, connection, or association with DDM and/or the Website, and as to the origin, sponsorship or approval of Defendants' good and services.

25.     Defendants' unauthorized use of DDM's Marks is also likely to cause initial interest and other confusion among users and potential users of the Website and/or among customers and potential customers of DDM.

26.     Defendants actions constitute trademark infringement and/or false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

27.     Unless enjoined, Defendants will continue to cause irreparable harm to, and injury to the goodwill and reputation of DDM and/or the Website.

28.     As a direct and proximate result of Defendants' wrongful acts, DDM has also suffered pecuniary damages from Defendants actions in an amount to be determined at trial.

29.     On information and belief, Defendants' activities were taken with knowledge of DDM's rights, and thus constitute deliberate, willful, and/or intentional infringement.  As a result, DDM is further entitled, pursuant to 15 U.S.C. § 1117, to treble damages, together with interest thereon, in an amount to be determined at trial.

30.     Defendants' infringement is exceptional and DDM is entitled to recover its costs and reasonable attorney fees associated with this action pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### (Common Law Trademark Infringement)

31.     DDM realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

32.     DDM is the owner of the Marks, and the consuming public recognizes the Marks as being distinctive, and as an identifier of the classified ad service that DDM provides through the Website.  DDM's Marks have acquired secondary meaning.

33.     Notwithstanding DDM's well-known prior rights in the Marks, Defendants used, are using, and continue to use, without authorization, DDM's Marks in commerce and in connection with their products and services, including for example by misrepresenting that Defendants are "an official KSL Cars product and service vendor" and by branding or otherwise identifying their products and services as "KSL Cars 2.0 Dealership Accounts" and "KSL Cars 2.0 Manual Post Account."

34.     Defendants' unauthorized use of the Marks in connection with their goods and services in commerce is likely to cause confusion, mistake, or deception in the marketplace.

35.     Defendants' unauthorized use of DDM's Marks is also likely to cause initial interest and other confusion among users and potential users of the Website and/or among customers and potential customers of DDM.

36.     Defendants' actions constitute common law trademark infringement.

37.     Unless enjoined, Defendants will continue to cause irreparable harm to, and injury to the goodwill and reputation of DDM and/or the Website.

38.     As a direct and proximate result of Defendants' wrongful acts, DDM has also suffered pecuniary damages from Defendants actions in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Computer Fraud Abuse Act, 18 U.S.C. § 1030)**

39.     DDM realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

40.     DDM utilizes security and protection mechanisms to safeguard access to the Website. As such, the Website is a protected computer and/or operates on a protected computer, within the meaning of 18 U.S.C. § 1830.

41.     Defendants have knowingly and with intent to defraud, accessed the Website and/or the computers that operate the Website, or exceeded the scope of their authorized access, and by means of such conduct furthered their fraud and obtained free advertising for Defendants' customers by reposting car ads without paying DDM the required Repost Fee, which conduct is in violation of 18 U.S.C. § 1030(a)(4).

42.     Additionally, on information and belief, Defendants intentionally accessed DDM's computers without authorization, or exceeded the scope of their authorized access, and thereby obtained information from DDM's protected computers that facilitated Defendants' unauthorized reposting of car ads without paying DDM the required Repost Fee, which conduct is in violation of 18 U.S.C. § 1030(a)(2)(C).

43.     Further, on information and belief, Defendants knowingly and with intent to defraud trafficked in, traffics in, and continues to traffic in information through which DDM's protected computers may be accessed without authorization, which trafficking affects interstate commerce, by providing commercial services to automobile vendors whereby Defendants' charge a fee to repost car ads without paying DDM the required Repost Fee, which conduct is in violation of 18 U.S.C. § 1030(a)(6)(A).

44.     Defendants' wrongful conduct, as set forth above, caused a loss to DDM, in the aggregate, of more than $5,000 in a one-year period.   Accordingly, pursuant to 18 U.S.C. § 1030(g), DDM is entitled to bring a private cause of action against Defendants for their violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

## FOURTH CAUSE OF ACTION
### (Unfair Competition, Utah Code Ann. § 13-5a-101 *et seq.*)

45.     DDM realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

46.     Defendants by their actions set forth above, have engaged in intentional business acts or practices that are unlawful, unfair and fraudulent, and which have caused a material diminution in the value of the trademarks held by DDM, including, but not limited to, the Marks, and also constitute infringement of such trademarks, and has thereby engaged in unfair competition pursuant to Utah Code § 13-5a-102(4).

47.     On information and belief, Defendants have engaged in unfair competition in willful and deliberate disregard of the rights of DDM and the consuming public.

48.     Due to Defendants' unfair competition practices, DDM has suffered damages and irreparable harm.

49.     Defendants' conduct, as set forth above, gives rise to a cause of action for unfair competition under Utah Code § 13-5a-101 et seq.

50.     Based on the foregoing, DDM is entitled to declaratory, injunctive and monetary relief against Defendants, along with its attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Tortious Interference)

51.     DDM realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

52.     Defendants have intentionally interfered with DDM's relationships with its clients by misrepresenting its association with the Marks, DDM, and/or the Website and by allowing DDM's customers to repost used cars at the top of the first page of the Website for a price.

53.     Defendants' misrepresentations and unauthorized use of DDM's proprietary information was unlawful and improper.  Defendants' use of improper means to interfere with DDM's customers has deprived DDM of revenue and business relationships.

54.     As a direct and proximate result of Defendants' actions, DDM has been damaged in an amount of no less than $1,000,000.

55.     Defendants' conduct is willful and malicious entitling DDM to punitive damages as a result of Defendants' actions.

## SIXTH CAUSE OF ACTION
### (Violation of the Utah Truth in Advertising Act)

56.     DDM realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

57.     The actions of Defendants described above have been undertaken in connection with the solicitation of business.

58.     Defendants' actions described above creates a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods, and/or causes of likelihood of confusion or of misunderstanding as to the affiliation, connection, association with, or certification by DDM.

59.     Further, Defendants represent that the products they sell have sponsorship, approval, characteristics, or qualities that they do not have, that Defendants have a sponsorship, approval, status, affiliation, or connection that they do not have and that the products they sell are approved by DDM.

60.     Accordingly, Defendants' actions constitute deceptive trade practices under the Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-3(b)-(c), (e)-(h).

61.     Defendants also disparage DDM goods by making a false/misleading representation of fact.  Defendants claim that "additionally KSL have eliminated the ability to repost for position."  This statement is a false and misleading fact under 1-(h) of the Truth and Advertising Act.

62.     The Defendants' actions thus constitute a violation of the Utah Truth in Advertising Act.

63.     DDM is therefore entitled to a permanent injunction barring Defendants from engaging in further violations of the Utah Trust in Advertising Act and to mandate that they promulgate corrective advertising in the same media in which they have advertising unlawfully.

64.     DDM has also been damaged by Defendants' actions in violation of the Utah Truth in Advertising Act in an amount to be proven at trial.

65.     Under Utah Code Ann. § 13-11a-4, DDM is entitled to recover its actual damages or statutory damages, whichever is greater.  DDM is further entitled to recover its attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
**(Fraud)**

66.     DDM realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

67.     In its advertisements to customers Defendants intentionally make misrepresentations about their association with the Marks, DDM, and/or the Website.

68.     Specifically Defendants allege that they are "an official KSL cars product and service vendor." Defendants further allege that "KSL has eliminated the ability to repost for position."  These statements are false and mislead customers of DDM to believe that Defendants are associated with the Website, that the DDM has eliminated the ability to "repost for position," and that Defendants are official product and service vendors of DDM and/or the Website.

37.     These representations were made for the specific purpose of inducing DDM's customers to pay Defendants for services rendered.   Customers reasonably relied upon these representations.  DDM has been damaged in the amount of no less than $1,000,000.

**PRAYER FOR RELIEF**

WHEREFORE, DDM prays that judgment be awarded in their favor and against Defendants as follows:

1.      An award of damages in an amount to be proven at trial;

2.      An injunction enjoining Defendants from their unlawful conduct;

3.      Recovery of attorney fees and court costs;

4.      An award of punitive damages;

5.      For such other legal or equitable relief as the Court may deem just and proper.

DATED this 19th day of August, 2014.

RAY QUINNEY & NEBEKER P.C.


/s/Matthew N. Evans
Matthew N. Evans
Michael K. Erickson
Attorneys for Deseret Digital Media, Inc.

Plaintiff's Address:
Deseret Digital Media, Inc.
c/o Matthew N. Evans
Ray Quinney & Nebeker
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

1290800